**UNITED STATES DISTRICT COURT**　　　　**EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:18-CR-7 |
| | § | |
| VINCENT TELLO | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Vincent Tello's ("Tello") *pro se* Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (#54), wherein he requests compassionate release based on Coronavirus Disease 2019 ("COVID-19").[1]  The Government filed a response in opposition to the motion (#55), to which Tello replied (#56).  United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny Tello's motion for compassionate release.  Having considered the pending motion, the Government's response, Tello's reply, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.　　Background

On November 16, 2018, the Government filed a one-count Information charging Tello with Conspiracy to Possess with Intent to Distribute Heroin, in violation of 21 U.S.C. § 846, to which Tello pleaded guilty pursuant to a binding plea agreement on the same day.  On March 13, 2019, the court sentenced Tello to 121 months' imprisonment, followed by a 5-year term of supervised release.  Tello is currently housed at Federal Correctional Institution Beaumont–Low ("FCI Beaumont–Low"), located in Beaumont, Texas.  His projected release date is October 3, 2026.

---

[1] Tello requested compassionate release from the warden where he is housed due to his purported need to care for his elderly mother.  Although Tello did not present this basis for relief in the instant motion, the court will consider whether his need to care for his mother warrants compassionate release.

II.  Compassionate Release

A.  Exhaustion of Administrative Remedies

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897,

2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release

motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, on December 6, 2020, Tello submitted a request for compassionate release to the warden of FCI Beaumont–Low, claiming that he needed to be a caregiver to his mother, who is 71 years old and suffers from diabetes. According to Probation, the warden denied Tello's request for compassionate release on December 7, 2020. In the denial, attached to Tello's reply, the warden states that reduction in sentence "consideration may be given to inmates whose children's caregiver has died or become incapacitated, or to care for a spouse or registered partner who has become incapacitated." The warden advised Tello that his desire to care for his mother did not meet the criteria for a reduction in his sentence and denied Tello's request for compassionate release. In the instant motion, Tello's motion for compassionate release does not mention his mother; rather, his basis for compassionate release is the existence of COVID-19 and a possible second wave of the disease. Thus, Tello is foreclosed from obtaining relief because he has not submitted a request for compassionate release based on the circumstances raised in the instant motion to the warden of the facility where he is housed. *See United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *see also Franco*, 973 F.3d at 468

("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *Alam*, 960 F.3d at 832 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Moreover, even if Tello had complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment.

B.     Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).     First, he must meet one of two conditions listed in

§ 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at 391. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at 392. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[2] *Id.*

Section 3582 (c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[3] However, § 1B1.13 references only motions filed by "the Director of the

---

[2] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

[3] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that

[BOP]"—not an individual defendant.[4]  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP.  *Cooper*, 2021 WL 1661493, at *3; *Shkambi*, 993 F.3d at 392.  Nevertheless, while recognizing that they are not binding, the court finds that the Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).

### 1.    Medical Condition

In the instant motion, Tello, age 39, contends that he is eligible for compassionate release due to his medical condition.  Specifically, Tello claims that "he must have an underlying issue that he was unaware of" because when he caught COVID-19, it was an "excruciating ordeal" in which he almost died.  Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is

---

establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[4] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

"suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

Here, when interviewed by Probation in connection with his Presentence Investigation Report ("PSR"), which was prepared on January 7, 2019, and revised on March 4, 2019, Tello described his overall physical condition as good. Tello stated that his only health issue was that he suffered from high blood pressure, which was being treated with lisinopril and amlodipine. Tello's BOP medical records indicate that he was previously diagnosed with hypertension (high blood pressure), but, as of March 2, 2020, the condition had been resolved, and he no longer suffers from or takes medication for hypertension. In fact, Tello's blood pressure on that day was 119/79, which is a normal reading.[5] Tello advised the physician, "I feel good; I stopped taking the BP pills [a] long time ago!!" He added, "I exercise daily [and] I eat [well]." In addition to having a history of hypertension, Tello is also obese. Indeed, Tello's medical records reveal that on March 2, 2020, he was 5 feet, 8 inches tall and weighed 199 pounds, making him obese, with a body mass index ("BMI") of 30.3.[6]

---

[5] According to the Centers for Disease Control and Prevention ("CDC"), a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

[6] According to the CDC, an adult with a BMI of 30.0 and above is considered obese.

Tello's medical records confirm that he tested positive for COVID-19 on November 6, 2020. Contrary to Tello's assertion, however, it does not appear that Tello had a severe case of COVID-19. On November 6, 2020, he denied having a cough, shortness of breath, fatigue, body aches, sore throat, diarrhea, headache, loss of taste or smell, nausea, or vomiting. His COVID-19 case was resolved by November 16, 2020. On that day, Nurse Practitioner S. Henderson noted that Tello "is not severely immunocompromised and did not have a severe illness requiring hospitalization."

Moreover, according to Probation, Tello is classified as a BOP medical Care Level 2 inmate. The BOP's Clinical Practice Guidance dated May 2019 states that Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months." Further, "their medical conditions can be managed through routine, regularly scheduled appointments for monitoring." "Enhanced medical resources, such as consultations or evaluation by medical specialists may be required from time to time." Probation further reports that Tello has no medical restrictions and is employed at the facility where he is housed.

The court may only speculate as to what underlying issue(s) purportedly made Tello's case of COVID-19 an "excruciating ordeal." Even assuming that his underlying issues were his obesity and hypertension, Tello still has not demonstrated that his afflictions warrant compassionate release. None of Tello's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433. The court acknowledges that Tello's underlying medical conditions, according to the CDC website, can make him more likely to

become severely ill should he contract COVID-19[7]; nonetheless, such commonplace maladies, like obesity and hypertension, do not make Tello's case "extraordinary." *See id*. at 434.

Indeed, according to the CDC, 42.5% of the adult population in the United States is obese and 73.6% is overweight. In addition, 45% of the adults in the United States (108 million) have hypertension, and of those, only about 24% have their condition under control. Due to their prevalence, obesity and hypertension cannot be deemed "extraordinary" in order to merit compassionate release. *See United States v. Harmon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming denial of compassionate release to a 52-year-old woman who was obese with a body mass index of 36); *Thompson*, 984 F.3d at 434 (noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *United States v. Grant*, No. 16-00172-01, 2021 WL 149308, at *4 (W.D. La. January 15, 2021) (noting that "while obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19, courts have found that obesity—alone or even paired with other medical conditions—does not provide adequate grounds for compassionate release"); *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *2 (E.D. La. Dec. 22, 2020) (finding that defendant's morbid obesity did not rise to the level of an extraordinary and compelling circumstance that would justify his early release); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has hypertension, a condition that may increase his risk for severe illness from

---

[7] In relevant part, the CDC states that adults who are overweight or obese and who have heart conditions (such as hypertension) can be more likely to become severely ill from COVID-19.

COVID-19, without more, does not present an "extraordinary and compelling reason" for compassionate release); *United States v. Wilson*, No. 2:18cr132, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (rejecting the notion that inmate's hypertension claim was sufficient to justify early termination of sentence); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release to an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted"). Thus, Tello has failed to establish the existence of medical conditions that would constitute extraordinary and compelling reasons to reduce his sentence.

Moreover, regarding Tello's history of drug abuse, courts are precluded from "lengthening a prison term in order to promote a criminal defendant's rehabilitation," but in the present case, the court is deciding whether to reduce, not extend, a sentence. *Tapia v. United States*, 564 U.S. 319, 321 (2011); *see United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). Here, Tello has a history of abusing alcohol, marijuana, cocaine, and heroin daily, and has intermittently used methamphetamine and Xanax. Furthermore, Tello's PSR reflects that he continued to use a variety of drugs despite receiving previous drug treatment while at a halfway house in conjunction with a prior drug conviction. Therefore, releasing Tello early may facilitate his drug abuse, as he would gain unfettered access to alcohol and illegal drugs outside the BOP.

### 2.    Family Circumstances

In his request to the warden, Tello contends that his family circumstances present extraordinary and compelling reasons that justify compassionate release. As explained above, although the court is not bound by § 1B1.13 or the commentary thereto, the court views the

commentary as informative of its analysis as to what reasons may be sufficiently extraordinary and compelling to merit compassionate release. *See Shkambi,* 993 F.3 at 392; *see also Thompson*, 984 F.3d at 433. The U.S.S.G. acknowledges that extraordinary and compelling reasons may exist with respect to a defendant's family circumstances, under the following conditions: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C)(i)-(ii).

Here, Tello asserts that he wishes to be a caregiver for his 71-year-old mother, who is suffering from diabetes. In this instance, Tello's desire to care for his mother does not constitute extraordinary and compelling reasons warranting compassionate release. *See United States v. Envert Francisco-Ovalle*, No. 18-CR-526-AJN, 2021 WL 123366, at *3 (S.D.N.Y. Jan. 13, 2021) ("Defendant's desire to provide financial support for his family, while . . . admirable, applies broadly to incarcerated persons and does not in itself provide extraordinary and compelling reasons justifying release."); *United States v. Goldberg*, No. CR 12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020) (noting that a desire to care for one's elderly parents does not constitute an extraordinary and compelling reason because "[m]any, if not all inmates, have aging and sick parents." (quoting *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019))). Moreover, Tello has not shown that he is the only available cargiver for his mother. His PSR indicates that he has four adult siblings—a sister and three bothers—who reside in Dallas, Texas, where his mother lives, who could assist in her care. *See United States v. Blevins*, No. 5:09-CR-15-DCB-JCS, 2020 WL 3260098, at *5 (S.D. Miss. June

12

16, 2020) (The court denied compassionate release because Defendant was not "the only available caregiver for the spouse or registered partner"); *United States v. Crandle*, No. 10-35, 2020 WL 2188865, at *4 (M.D. La. May 6, 2020) (denying request for relief and noting that "the court has before it no information as to why other relatives cannot care for [the defendant's] parents"). In addition, Tello furnishes no documentation verifying his mother's illness or the extent, if any, of her disability. Hence, Tello's family circumstances do not establish that he is entitled to early release from prison.

### 3.    Other Reasons

Tello also seeks compassionate release for other reasons. Specifically, he asserts that compassionate release is warranted due to his post-sentence rehabilitation. Tello further claims that the court should grant his request for compassionate release due to the presence of COVID-19 in prison and a potential second wave of the disease.

Tello maintains that his post-sentence rehabilitation, evidenced by the courses and programs he has completed, establishes extraordinary and compelling reasons for compassionate release. Although Tello mentions several courses he has taken to prepare him for success when released, Tello has not presented sufficient grounds warranting his release at this time. While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi,* 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States*

*v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act).

Moreover, Tello expresses concerns regarding the spread of COVID-19 among the prison population. Nevertheless, as of May 18, 2021, the figures available at www.bop.gov list 2 inmates (out of a total inmate population of 1,910) and 1 staff member at FCI Beaumont–Low as having confirmed positive cases of COVID-19, 1,101 inmates and 27 staff members who have recovered, and 1 inmate who succumbed to the disease. Indeed, according to Tello's medical records, he tested positive for COVID-19, was placed in isolation, received treatment, and has since recovered from the virus. Thus, it appears that the facility where Tello is housed is handling the outbreak appropriately and providing adequate medical care.

Although Tello expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Tello, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its

extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who, like Tello, have already contracted and recovered from the virus. *See*, *e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted

COVID); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) (quoting *United States v. Delorbe-Luna*, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release.")); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Shrout*, No. 15-CR-438, 2020 WL 3483703, at *4 (D. Or. June 26, 2020) ("[Defendant] has already contracted COVID-19 and, crucially, the BOP has properly managed the disease.").

Furthermore, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff. To date, the BOP has administered approximately 174,373 doses of the vaccine. According to www.bop.gov, the Beaumont Federal Correctional Complex, which includes FCI Beaumont–Low, where the defendant is housed, has fully inoculated 1,569 inmates and 331 staff members.

According to Probation, however, Tello refused the Pfizer vaccine on February 21, 2021, without any suggestion that an inoculation for COVID-19 was medically contraindicated. Notably, courts have denied compassionate release where, as here, the inmate has refused the COVID-19 vaccine. *See United States v. Greenlaw*, No. 1:18-CR-00098-JAW-06, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) ("To reward [the defendant] for his vaccination refusal would create a

perverse incentive for defendants like [the defendant] to refuse COVID-19 vaccines and put their lives and the lives of others in jeopardy in an effort to bolster their compassionate release motions."); *United States v. Pruitt*, No. 3:14-CR-0384-B-1, 2021 WL 1222155, at *3 (N.D. Tex. Apr. 1, 2021) (finding that the defendant "cannot refuse the vaccine to prevent against COVID-19 on the one hand and then argue for compassionate release because he faces an increased risk of severe illness or death should he contract COVID-19 on the other hand"); *United States v. Jackson*, No. CR 07-40-2, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021) (holding that because the defendant refused the COVID-19 vaccine, she "voluntarily declined to 'provide self-care' and mitigate her risk of a severe COVID-19 infection"); *United States v. Austin*, No. 15-20609, 2021 WL 1137987, at *2 (E.D. Mich. Mar. 25, 2021) ("Defendant cannot establish that his conditions are exceptional and demand immediate release when he intentionally prevents the BOP from mitigating dangers to his health and safety."); *United States v. King*, No. 16-CR-478-11 (CS), 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) ("In declining vaccination[, Defendant] declined the opportunity to reduce his risk [of] exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."). Similarly, Tello cannot be heard to complain about the dangers of COVID-19 in prison and then fail to take the available measures to mitigate the risk, such as being vaccinated.

Moreover, it is well settled that "compassionate release is discretionary, not mandatory." *Chambliss*, 948 F.3d at 693. In exercising its discretion, the court finds that Tello has failed to establish that his medical condition, family circumstances, or other reasons exist that would

constitute extraordinary and compelling reasons to reduce his sentence to time served and release him from prison.

C.    Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Shkambi,* 993 F.3 at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94. Tello's offense of conviction stems from his participation in a drug-trafficking conspiracy involving the distribution of between 10 and 30 kilograms of heroin.

Tello was a significant trafficker of heroin for a number of years in the Eastern and Northern Districts of Texas. On April 11, 2005, an officer performed a traffic stop on a vehicle Tello was driving and discovered a bag containing 8.9 grams of black tar heroin. In 2007, two cooperating individuals told agents that they began purchasing heroin from Tello in April 2007 in quantities of 1 to 2 grams per purchase and 2 to 3 grams per day, respectively. One of the individuals provided an address in Dallas, Texas, as the source location, which was Tello's residence. Between August and September 2007, an undercover officer provided individuals with funds to purchase heroin from Tello on several occasions, which yielded 2.89, 5.9, and 6.02 grams of heroin. After his arrest on September 26, 2007, a coconspirator stated that he purchased 6.2 grams of heroin per day from Tello for a total of 250 grams. In October 2007, a cooperating individual admitted that he or she purchased 3.1 grams of heroin per week from Tello, and in December 2007, another stated that he or she purchased 3.1 grams per day from him.

Furthermore, Tello engaged in transactions with coconspirators in which he obtained 3 kilograms of heroin in February, March, and April 2015; 9 kilograms in May 2015; 3 kilograms in June 2015; 6 kilograms in July 2015; and 3 kilograms in August 2015. In October 2017, Tello sold a cooperating individual 25 grams of heroin. His telephone conversations with various coconspirators discussing the sale of drugs were captured by wire intercept. In January 2018, another cooperating individual informed law enforcement that he or she had sold the defendant a total of 1 kilogram of heroin over a two-month period. Thereafter, on January 18, 2018, Tello was arrested at a residence in Dallas, Texas. A search of the residence revealed 163 grams of heroin, 17 grams of cocaine, and more than $10,000 in United States currency.

Moreover, Tello has an extensive criminal history which includes prior convictions for possession of marijuana (5), possession of a controlled substance (4) (alprazolam, cocaine, methamphetamine, and heroin), and evading arrest. Tello also violated the conditions of previous terms of probation. In addition to his criminal history, Tello is a confirmed member of a street gang and has a history of daily poly-substance abuse, including marijuana, cocaine, and heroin. While in prison, Tello incurred a disciplinary violation in 2019 for possessing a hazardous tool, a cell phone. In view of the nature and circumstances surrounding his offense of conviction, his criminal history, and his history of substance abuse, the court cannot conclude that Tello's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

In addition, granting Tello compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a significant portion of his

19

sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing Tello after he has served only 35% of his 121-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct. As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Tello's track record is similarly a poor one. In this instance, there is no reason to believe that Tello would not revert to his drug-dealing and drug-abusing behavior if released from prison at this juncture.

D.     Placement in FCI Beaumont–Low

Tello also asks the court to recommend that he be placed in FCI Beaumont–Low's camp, the lowest custody level at the institution. Regarding his request for transfer, "a decision to

designate a facility as a place of federal detention, pursuant to 18 U.S.C. § 3621(b), is 'plainly and unmistakably within the [BOP's] discretion and [the court] cannot lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy.'" *Peagler v. Reese*, No. 5:07-CV-166, 2010 WL 1409854, at *1 (S.D. Miss. Apr. 2, 2010) (quoting *Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 75 (2d Cir. 2005)); *accord United States v. Sikes*, No. 4:12-CR-211, 2021 WL 1090751, at *1 (E.D. Tex. Mar. 22, 2021) ("Once a sentence is imposed, BOP is solely responsible for determining an inmate's place of incarceration."); *Vega v. Bergami*, No. EP-20-CV-127-DCG, 2020 WL 3686141, at *5 (W.D. Tex. July 6, 2020); *Pass v. Mosley*, No. 3:15CV664 CWR-LRA, 2017 WL 6806658, at *3 (S.D. Miss. Nov. 8, 2017), *adopted by* No. 3:15-CV-664-CWR-LRA, 2018 WL 283856 (S.D. Miss. Jan. 3, 2018). Indeed, "[t]he [BOP] has the sole authority to designate a prisoner's place of incarceration." *United States v. Chaney*, 823 F. App'x 278, 279 (5th Cir. 2020); *see* 18 U.S.C. 3621(b).

At sentencing, a court may make a non-binding recommendation to the BOP regarding where a defendant should be imprisoned. *See* 18 U.S.C. § 3621(b)(4). Courts, however, are split as to whether such recommendation can be made post-judgment. *See, e.g., United States v. Mosz*, No. 2:15-CR-219-JCM(VCF), 2019 WL 539010, at *2 (D. Nev. Feb. 11, 2019) ("[T]his court does not have authority to issue a post-judgment recommendation."); *United States v. Bishop*, No. 07-00516 JMS (06), 2015 WL 13235851 at *2 (D. Haw. Oct. 2, 2015) (finding that there is no persuasive authority for a post-judgment judicial recommendation). *But see United States v. Nelson*, No. CR 11-0152-6-CG-C, 2019 WL 1330919, at *2 (S.D. Ala. Mar. 22, 2019) (issuing a post-judgment recommendation); *United States v. Patterson*, No. 2:00CR187, 2019 WL 127962, at *1 (E.D. Va. Jan. 8, 2019) (same). Assuming courts have the authority to make such a

recommendation, the court declines to do so here because, "compared to the BOP, this court has little to no information about whether the defendant's request is appropriate." *United States v. Jacko,* No. 14-CR-98-PP, 2019 WL 398829, at *2 (E.D. Wis. Jan. 31, 2019); *see McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *United States v. Carrasco*, No. EP-19-CR-01957-DCG, 2021 WL 141273, at *3 (W.D. Tex. Jan. 15, 2021) (declining to recommend a defendant's particular placement because the BOP was in the "best position" to evaluate her, given that the BOP's employees worked with her and were privy to her complete records). Accordingly, the court will not recommend that Tello be transferred to the camp at FCI Beaumont–Low. Rather, the court finds that such a decision is best left up to the BOP.

III.  Conclusion

In sum, Tello has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Tello's *pro se* Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (#54) is DENIED.

SIGNED at Beaumont, Texas, this 18th day of May, 2021.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE